33 F.3d 60
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph MIKESELL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gilbert AGUILAR, Defendant-Appellant.
 Nos. 93-10617, 93-10619.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 14, 1994.
Decided Aug. 17, 1994.
 
 Before: FERNANDEZ, RYMER, and T.G. NELSON, Circuit Judge.
 
 
 1
 MEMORANDUM*
 
 
 2
 Gilbert Aguilar (Aguilar) appeals his conviction under 18 U.S.C. Sec. 924(1)(A) for falsifying his address when purchasing firearms and his sentence. Joseph John Mikesell (Mikesell) appeals his conviction for aiding and abetting Aguilar. We affirm.
 
 A. Motion to Suppress Evidence
 
 3
 Aguilar argues the district court erred in denying his motion to suppress evidence seized at his mother's home claiming, inter alia, that the search warrant was invalid for lack of probable cause. We disagree.
 
 
 4
 The warrant was supported by probable cause as articulated in Morris' affidavit. As the affidavit states, agents saw Aguilar leave Dealer's Outlet carrying what looked like boxes containing firearms and loading them into a car. After trailing the car and eventually locating it at the 5323 North 23rd Avenue residence, agents saw Aguilar unload the boxes and carry them into the house. Further, agents knew that Aguilar claimed to reside at 1318 East Garfield and that there was no residence at that location. Instead, it was an empty street near an elementary school. These facts reasonably suggest that Aguilar falsified his address on the ATF Form 4473 in violation of 18 U.S.C. Sec. 922(a)(6), the section which Morris relied on in his affidavit, as well as 18 U.S.C. Sec. 924(a)(1)(A), the section under which Aguilar was convicted. Based on these facts alone, we hold there was a substantial basis for concluding Morris' affidavit established probable cause. See United States v. Hernandez, 937 F.2d 1490, 1494 (9th Cir.1991).
 
 
 5
 Aguilar argues the magistrate erred by considering paragraph nine of Morris' affidavit which refers both to the reasons for the protective sweep conducted before the warrant was obtained and to the rifle boxes which were seen in plain view during that sweep. He argues that neither exigent circumstances nor probable cause justified the protective sweep. See United States v. Lai, 944 F.2d 1434, 1441 (9th Cir.1991), cert. denied, 112 S.Ct. 947 (1992) (requiring probable cause and exigent circumstances to justify warrantless entry). However, because we hold the facts in paragraphs one through eight, which were known to the agents prior to the protective sweep, are sufficient to show nexus to a crime, see United States v. Michaelian, 803 F.2d 1042, 1045 (9th Cir.1986) ("[A]n affidavit containing a recitation of facts which show a nexus to a federal crime furnishes probable cause to support a warrant."), we do not need to resolve the issue of whether the protective sweep was proper. See United States v. Sitton, 968 F.2d 947, 956 (9th Cir.1992) (holding where "there is no evidence that the decision to seek the second warrant was prompted by the first search, the second warrant is valid if, excising the tainted statements, the untainted portions of the affidavit contain a sufficient showing of probable cause."), cert. denied, 113 S.Ct. 1306 (1993).
 
 
 6
 Aguilar, relying on United States v. Hove, 848 F.2d 137, 139 (9th Cir.1988), also argues Morris' affidavit was insufficient to establish probable cause because it did not establish Aguilar's connection to the residence and the vehicle and because it did not actually describe Aguilar. We disagree.
 
 
 7
 The affidavit described Aguilar as a Hispanic male wearing black pants, a white shirt and a goatee. Further, it stated that this Hispanic male purchased firearms, loaded them into the vehicle, drove away, and was later seen unloading the firearms from the vehicle and carrying them into the residence. Based on these facts, Aguilar's contentions are meritless. Furthermore, we conclude Aguilar's contention that the affidavit was insufficient because it did not expressly state 1318 East Garfield was a "false" address is also meritless.
 
 
 8
 We hold the district court did not err in denying the motion to suppress. Because we conclude the warrant was valid, we need not address the officers' good faith reliance on it.
 
 B. Jury Instructions
 1. Materiality
 
 9
 Aguilar and Mikesell both appeal the district court's refusal to instruct the jury that a false statement must be material under Sec. 924(a)(1)(A). They argue that Sec. 922(a)(6), a substantive law which requires the false statement to be material, supersedes Sec. 924(a)(1)(A), a penalty provision which does not refer to materiality.
 
 
 10
 We addressed the duplicity of Secs. 922(a)(6) and 924(a) in United States v. Buck, 548 F.2d 871, 876 (9th Cir.), cert. denied, 434 U.S. 890 (1977). Relying on United States v. Sullivan, 459 F.2d 993 (8th Cir.1972), we held "[Sec.] 924(a) creates a separate statutory offense from that set forth in Sec. 922(a)(6)." Buck, 548 F.2d at 876-77. In Sullivan, the court noted that "[w]hile a violation of ... Sec. 922(a)(6) expressly requires a showing of materiality no such expression is found in Sec. 924(a)." Sullivan, 459 F.2d at 994. It reasoned that although Sec. 924(a) was broad, the language was not ambiguous, and it concluded it was bound by Congress' clear language. Id. Likewise, we are bound by our decision in Buck and hold that the district court did not err in refusing to instruct the jury on materiality because Sec. 924(a)(1)(A) does not require materiality.
 
 2. Residence Address
 
 11
 In accord with the language of the ATF Form 4473, the district court instructed the jury that Dealer's Outlet was required by law to keep a record of a "buyer's residence address." Aguilar and Mikesell both challenge this instruction. Relying on United States v. Benton, 329 F.Supp. 331 (D.N.H.1971), they argue it is the purchaser's state of residency, and not his street address, which is relevant to a violation of Sec. 924(a)(1)(A).
 
 
 12
 The court in Benton, addressing a violation of Sec. 922(a)(6), held "[t]he fact that a buyer may have intentionally given a false address does not become material until the government first proves that the defendant is not a resident of the state in which the dealer is doing business." Id. at 332. However, other courts have rejected Benton 's conclusion. See United States v. Gudger, 472 F.2d 566, 567-568 (5th Cir.1972) (failure to provide correct street address violated Sec. 922(a)(6)); United States v. Crandall, 453 F.2d 1216, 1216-17 (1st Cir.1972) (same).
 
 
 13
 Aguilar and Mikesell's reliance on Benton is misplaced. Section 924(a)(1)(A) criminalizes a knowing false statement regarding information to be kept in a licensed dealer's records. Section 923(g)(1)(A) requires licensed dealers to maintain records in a form prescribed by regulation. The regulations require a purchaser to provide more than merely his state of residency. See 27 CFR Sec. 178.124(c) (requiring address on ATF Form 4473 to show county in which purchaser resides). Moreover, the court in Benton addressed Sec. 922(a)(6) which is a more stringent statute than Sec. 924(a)(1)(A) because it requires a false statement to be material. Thus, we hold that providing a false address under Sec. 924(a)(1)(A) is sufficient to establish a violation of that statute and that the district court did not abuse its discretion when it instructed the jury, in accord with the language of Form ATF 4473, that a dealer is required by law to maintain a record of the "buyer's residence address."
 
 C. Sufficiency of Evidence
 1. Aguilar
 
 14
 Aguilar argues that the Government failed to prove he lived at 7508 West McKenzie, his alleged true address according to the indictment. However, Aguilar offers no authority to support his contention that the Government must prove his actual address on the date of the crime. Aguilar's true address is not an essential element of the charged crime. Reference to his address in the indictment was merely surplusage, and "[h]armless surplusage in [an] indictment does not require a reversal of [the] conviction." United States v. Bell, 767 F.2d 405, 407 (8th Cir.1985). We hold there was sufficient evidence to support Aguilar's conviction.
 
 2. Mikesell
 
 15
 Mikesell moved for acquittal at the close of the Government's case, although he failed to do so at the close of trial. He now challenges the sufficiency of the evidence supporting his conviction.
 
 
 16
 To establish a defendant's liability as an aider and abettor, the Government must prove that the defendant "associate[d] himself with the criminal venture, participate[d] in it as in something that he wishe[d] to bring about and [sought] by his action to make it succeed." United States v. Arias-Villanueva, 998 F.2d 1491, 1503 (9th Cir.), cert. denied, 114 S.Ct. 573 (1993). "The aider and abettor's criminal intent may be inferred from the attendant facts and circumstances and need not be established by direct evidence." Id. (emphasis added).
 
 
 17
 The Government established that Mikesell sold nine AK47 rifles to Aguilar. On the ATF Form 4473, Mikesell indicated he confirmed Aguilar's true identity with his driver's license, although the form gave Mikesell the option of identifying a purchaser either by a driver's license or by personal knowledge. Given that Mikesell was Aguilar's stepfather, it seems more reasonable that he would have indicated he knew Aguilar on a personal basis rather than by requiring him to show his driver's license as identification. From Mikesell's overly cautious identification of Aguilar, the jury could have reasonably inferred that Mikesell was taking extraordinary steps to disassociate himself from Aguilar. Moreover, Aguilar's driver's license displayed a different address from the 1318 East Garfield address offered by Aguilar on the form. The Government also established that Aguilar resided in a guest house adjacent to Mikesell's residence from early 1992 until sometime in July 1993. Although Aguilar contends he moved out on or about July 3, 1993, the Government offered a rent check from Aguilar dated after July 3. From this evidence, the jury could have inferred that Aguilar was actually living at Mikesell's when he falsified his residence because he had paid rent for July. Finally, the Government established that agents seized both the rifles purchased by Aguilar on July 13 and empty rifle boxes from the July 2 purchase in Mikesell's bedroom when they searched the residence at 5323 North 23rd Avenue.
 
 
 18
 A jury could have reasonably inferred from these attendant facts and circumstances that Mikesell knew the address offered by Aguilar was false. Thus, the evidence against Mikesell is sufficient to meet the more lenient standard for reviewing the sufficiency of the evidence. See Arias-Villanueva, 998 F.2d at 1503 (a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt while viewing the evidence in the light most favorable to the Government). A fortiori, we hold it is sufficient to meet the stricter standard which is applied when a defendant fails to properly move for acquittal, and conclude there was no plain error. See United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.), cert. denied, 493 U.S. 863 (1989).
 
 D. Aguilar's Sentence
 
 19
 1. Downward Departure Pursuant to U.S.S.G. Sec. 5K2.11
 
 
 20
 Aguilar argues he was entitled to a downward departure because his conduct did not "threaten the harm or evil sought to be prevented" by Sec. 924(a)(1)(A). U.S.S.G. Sec. 5K2.11. "[A] district court's discretionary decision not to depart downward from the guidelines is not subject to review on appeal." United States v. Morales, 898 F.2d 99, 103 (9th Cir.1990). An exception to this rule applies if the sentencing judge erroneously believed departure was prevented as a matter of law. See United States v. Belden, 957 F.2d 671, 676 (9th Cir.), cert. denied, 113 S.Ct. 234 (1992). In Aguilar's case, there is no indication that the judge believed departure was prohibited as a matter of law. Consequently, we are unable to review the district court's denial of a downward departure.
 
 
 21
 2. Downward Adjustment Pursuant to U.S.S.G. Sec. 2K2.1(b)(2)
 
 
 22
 Aguilar argues he was entitled to a downward adjustment in his offense level pursuant to U.S.S.G. Sec. 2K2.1(b)(2) because he possessed the AK47 rifles for collection purposes.
 
 
 23
 The district court's refusal to adjust Aguilar's sentence downward was not in error. The surrounding circumstances indicate that Aguilar possessed numerous, non-unique AK47 rifles which would not be collectibles. Further, Aguilar had an extensive criminal history involving firearms. See U.S.S.G. Sec. 2K2.1, comment. (n. 10) (noting prior convictions involving firearms relevant factor for consideration). The district court was not required to accept Aguilar's self-serving statement that he was collecting AK47 rifles. See United States v. Gavilan, 966 F.2d 530, 532 (9th Cir.1992) (addressing Sec. 2K2.1(b)(1) which provided reduction for collection under 1990 version of Sentencing Guidelines). Thus, we hold Aguilar failed to prove he was entitled to a reduction under Sec. 2K2.1(b)(2). See id. (requiring proof by a preponderance of the evidence).
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3